

FILED
CLERK, U.S. DISTRICT COURT

9/17/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

*DPA 2/27/25*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2024 Grand Jury   *AZ No. 25- 3079MJ*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 2:24-00369(A)-SPG |
| Plaintiff, | F I R S T |
| | S U P E R S E D I N G |
| v. | I N D I C T M E N T |
| RYAN JAMES WEDDING, | [21 U.S.C. § 846: Conspiracy to |
|   aka "James Conrad King," | Distribute and Possess with Intent |
|   aka "Jesse King," | to Distribute Controlled |
|   aka "~R137," | Substances; 21 U.S.C. § 963: |
|   aka "~PE," | Conspiracy to Export Cocaine; 21 |
|   aka "~3.14," | U.S.C. §§ 848(a), (b): Continuing |
|   aka "R," | Criminal Enterprise; 21 U.S.C. |
|   aka "RW," | § 848(e)(1)(A): Murder in |
|   aka "Mexi," | Connection with a Continuing |
|   aka "El Jefe," | Criminal Enterprise and Drug |
|   aka "El Toro," | Crime; 21 U.S.C. |
|   aka "Boss," | §§ 846, 848(e)(1)(A): Attempt to |
|   aka "Buddy," | Commit Murder in Connection with a |
|   aka "Giant," | Continuing Criminal Enterprise and |
|   aka "Grande," | Drug Crime; 21 U.S.C. §§ |
|   aka "Public," | 841(a)(1), (b)(1)(A)(ii)(II): |
|   aka "Public Enemy," | Possession with Intent to |
|   aka "NPKY8WY7," | Distribute Cocaine; 18 U.S.C. |
|   aka "FUJ93HXR," | § 924(c)(1)(A)(i): Possession of a |
| ANDREW CLARK, | Firearm in Furtherance of Drug |
|   aka "~Mero güero," | Trafficking Crimes; 21 U.S.C. |
|   aka "~The Dictator," | §§ 853 and 970, 18 U.S.C. |
|   aka "~El manda mas," | § 924(d): Criminal Forfeiture] |
|   aka "~el chiquito loco," | |
|   aka "~el niño problemático," | |
|   aka "~The Dick," | |
|   aka "El Guapo," | |
|   aka "Mero Wero," | |
|   aka "Dick," | |
|   aka "Dictator," | |

```
        aka "New Dict,"
        aka "DCY87D3T,"
        aka "U9BM5XPD,"
        aka "6YFRTV3P,"
        aka "8ZEDZR2D,"
        aka "J57629UV,"
        aka "ZFJJX7EF,"
HARDEEP RATTE,
        aka "~PP,"
        aka "~diamond,"
        aka "~GEARZ,"
        aka "Uncle,"
        aka "Tio,"
        aka "9HW2UZZK,"
        aka "ZER4X4H7,"
        aka "BZUH5P4M,"
GURPREET SINGH,
        aka "~FARMER,"
        aka "~Poppey 1,"
        aka "Popey,"
        aka "Z7S6CMNZ,"
        aka "KU7TPJKB,"
        aka "KDXJBUUT,"
GENNADII BILONOG,
        aka "John,"
        aka "Jhon,"
CARLOS ALBERTO PEÑA GOYENECHE,
        aka "W7ZZTY4Y,"
RAKHIM IBRAGIMOV,
        aka "George,"
        aka "Russian,"
NAHIM JORGE BONILLA,
        aka "Nahhim,"
        aka "The One,"
        aka "$,"
        aka "4SSP8KTR,"
MALIK DAMION CUNNINGHAM,
        aka "Jamal Abukar,"
        aka "~MrPerfect,"
        aka "YBWZYA9W,"
JOEL SOSA CARDENAS,
ANDRES FELIPE PUCCETTI IRIARTE,
        aka "Lala kid,"
ANTHONY MENDOZA LOPEZ,
ANSELMO ACUNA GARCIA,
        aka "El Perro,"
        aka "The Dog,"
JUAN MANUEL QUIROZ JIMENEZ,
IQBAL SINGH VIRK,
        aka "Mark," and
RANJIT SINGH ROWAL,

            Defendants.
```

2

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[DEFENDANTS WEDDING, CLARK, RATTE, SINGH, BILONOG, GOYENECHE,
IBRAGIMOV, CARDENAS, IRIARTE, LOPEZ, GARCIA, JIMENEZ, VIRK, and
ROWAL]

A.    OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than
in or around January 2024, and continuing until on or about August 1,
2024, in Los Angeles, Riverside, and San Bernardino Counties, within
the Central District of California, in the countries of Mexico,
Colombia, and Canada, and elsewhere, defendants RYAN JAMES WEDDING,
also known as ("aka") "James Conrad King," aka "Jesse King," "~R137,"
aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka
"El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka
"Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," ANDREW
CLARK, aka "~Mero güero," aka "~The Dictator," aka "~El manda mas,"
aka "~el chiquito loco," aka "~el niño problemático," aka "~The
Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator,"
aka "New Dict," "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka
"8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," HARDEEP RATTE, aka "~PP,"
aka "~diamond," aka "~GEARZ," aka "Uncle," aka "Tio," aka "9HW2UZZK,"
aka "ZER4X4H7," aka "BZUH5P4M," GURPREET SINGH, aka "~FARMER," aka
"~Poppey 1," aka "Popey," aka "Z7S6CMNZ," aka "KU7TPJKB," aka
"KDXJBUUT," GENNADII BILONOG, aka "John," aka "Jhon," CARLOS ALBERTO
PEÑA GOYENECHE, aka "W7ZZTY4Y," RAKHIM IBRAGIMOV, aka "George," aka
"Russian," JOEL SOSA CARDENAS, ANDRES FELIPE PUCCETTI IRIARTE, aka
"Lala kid," ANTHONY MENDOZA LOPEZ, ANSELMO ACUNA GARCIA, aka "El

3

1 | Perro," aka "The Dog," JUAN MANUEL QUIROZ JIMENEZ, IQBAL SINGH VIRK,
2 | aka "Mark," and RANJIT SINGH ROWAL, and others known and unknown to
3 | the Grand Jury, conspired with each other to knowingly and
4 | intentionally distribute and possess with intent to distribute at
5 | least five kilograms of a mixture and substance containing a
6 | detectable amount of cocaine, a Schedule II narcotic drug controlled
7 | substance, in violation of Title 21, United States Code, Sections
8 | 841(a)(1), (b)(1)(A)(ii)(II).

9 | B.    MANNER AND MEANS OF THE CONSPIRACY

10 |     The objects of the conspiracy were to be accomplished, in
11 | substance, as follows:

12 |     1.    Defendant CLARK would direct an individual to negotiate a
13 | haulage deal with a Canadian-based drug transportation network (the
14 | "TP") run by defendants RATTE and SINGH.

15 |     2.    Defendant WEDDING would direct the individual to coordinate
16 | the transportation of cocaine from the Central District of California
17 | to Canada with defendants RATTE and SINGH.

18 |     3.    Defendant WEDDING and others known and unknown to the Grand
19 | Jury would arrange the storage of bulk quantities of cocaine in the
20 | Central District of California.

21 |     4.    Defendants CARDENAS, LOPEZ, and GARCIA, and others known
22 | and unknown to the Grand Jury, would store bulk quantities of cocaine
23 | in assorted stash houses throughout the Central District of
24 | California for a drug trafficking organization run by defendants
25 | WEDDING and CLARK (the "DTO").

26 |     5.    Defendant WEDDING would direct defendants GOYENECHE and
27 | IRIARTE to pick up bulk quantities of cocaine from defendants

28 |

1  CARDENAS, LOPEZ, and GARCIA, and others known and unknown to the

2  Grand Jury, and drop the cocaine off with a TP dispatcher.

3      6.   Defendants RATTE and SINGH would provide a name, phone

4  number, and dollar bill serial number "token" for identification

5  purposes when arranging for a DTO dispatcher to deliver cocaine to a

6  TP dispatcher in the Central District of California.

7      7.   Defendant RATTE would send defendants IBRAGIMOV and

8  BILONOG, and others known and unknown to the Grand Jury, to the

9  Central District of California to pick up the cocaine from a DTO

10  dispatcher.

11      8.   Defendants WEDDING, RATTE, SINGH, BILONOG, GOYENECHE,

12  IBRAGIMOV, IRIARTE, CARDENAS, LOPEZ, GARCIA, and JIMENEZ, and others

13  known and unknown to the Grand Jury, would deliver and assist in the

14  delivery of cocaine to TP dispatchers for eventual transportation to

15  Canada.

16      9.   Defendant RATTE would send defendants VIRK and ROWAL, and

17  others known and unknown to the Grand Jury, to the Central District

18  of California to transport the cocaine from the Central District of

19  California to Canada in long-haul semi-trucks.

20      10.  TP drivers would transport the cocaine from the Central

21  District of California to Canada in long-haul semi-trucks for

22  eventual distribution in Canada.

23  C.   OVERT ACTS

24      On or about the following dates, in furtherance of the

25  conspiracy and to accomplish its objects, defendants WEDDING, CLARK,

26  RATTE, SINGH, BILONOG, GOYENECHE, IBRAGIMOV, CARDENAS, IRIARTE,

27  LOPEZ, GARCIA, JIMENEZ, VIRK, and ROWAL, and others known and unknown

28  to the Grand Jury, committed various overt acts in Los Angeles,

Riverside, and San Bernardino Counties, within the Central District of California, in the countries of Mexico, Colombia, and Canada, and elsewhere, including, but not limited to, the following:

**JANUARY 2024 AND FEBRUARY 2024: DEFENDANT CLARK DIRECTS A CONFIDENTIAL SOURCE TO NEGOTIATE A HAULAGE DEAL WITH THE TP**

Overt Act No. 1:    On January 20, 2024, using coded language, defendant CLARK informed an individual who he believed was a member of the DTO, but who, in fact, was a confidential source working with law enforcement (the "CS"), that he wanted defendant SINGH to transport drugs for the DTO, but he needed defendant SINGH to first agree to a flat fee.

Overt Act No. 2:    On January 31, 2024, defendant CLARK inquired, via the encrypted messaging application Threema and using coded language, if the CS had spoken to defendant WEDDING about the TP transporting the DTO's cocaine.

Overt Act No. 3:    On January 31, 2024, via Threema, using coded language, defendant CLARK instructed the CS to tell defendant WEDDING that the DTO would pay a flat rate of $220,000 CAN per load.

Overt Act No. 4:    On February 20, 2024, defendants RATTE and SINGH had an in-person meeting with the CS in Toronto, Canada and agreed, using coded language, to transport the DTO's cocaine from the Central District of California to Canada for a flat rate of $220,000 CAN per load.

**MARCH 4, 2024: THE DTO DELIVERS APPROXIMATELY 293 KILOGRAMS OF COCAINE TO THE TP FOR EVENTUAL TRANSPORTATION TO CANADA**

Overt Act No. 5:    On March 1, 2024, via Threema, using coded language, defendant WEDDING informed the CS that he had cocaine in

Los Angeles that was ready to be delivered to a TP dispatcher and transported to Canada.

Overt Act No. 6:    On March 2, 2024, defendant SINGH created a group chat on Threema, including himself, defendant RATTE, and the CS, so that they could coordinate the cocaine delivery.

Overt Act No. 7:    On March 3, 2024, via Threema, using coded language, defendant WEDDING told the CS that the delivery would consist of 20 boxes containing 293 kilograms of cocaine.

Overt Act No. 8:    On March 3, 2024, via Threema, using coded language, defendant WEDDING asked the CS to obtain a phone number and dollar bill serial number from the TP so that he could pass it to the DTO dispatcher responsible for delivering the cocaine (defendant GOYENECHE).

Overt Act No. 9:    On March 3, 2024, in the Threema group chat with defendant SINGH and the CS, defendant RATTE stated, using coded language, that the person he had tasked to oversee the cocaine delivery from the DTO would be flying to Los Angeles that same day.

Overt Act No. 10:    On March 3, 2024, in the Threema group chat with defendant SINGH and the CS, defendant RATTE forwarded a screenshot relating that the person tasked with overseeing the cocaine delivery had landed in Los Angeles.

Overt Act No. 11:    On March 3, 2024, via Threema, defendant SINGH provided the CS with the telephone number of a drug transporter (defendant BILONOG) and a dollar bill serial number so that the CS could pass the information to the person who would deliver or coordinate the delivery of cocaine to the TP's dispatcher.

Overt Act No. 12:    On March 3, 2024, via text message, using coded language, defendant GOYENECHE asked an individual that he

1  believed was a TP dispatcher (defendant BILONOG), but who, in fact,

2  was the CS, to provide a dollar bill serial number for verification

3  purposes.

4      Overt Act No. 13:   On March 4, 2024, via text message, using

5  coded language, defendant GOYENECHE coordinated the cocaine delivery

6  time and location with an individual that he believed was a TP

7  dispatcher (defendant BILONOG), but who, in fact, was the CS.

8      Overt Act No. 14:   On March 4, 2024, in the Threema group chat

9  with defendant SINGH and the CS, defendant RATTE forwarded a

10  screenshot message relating that the DTO dispatcher had communicated

11  with the TP dispatcher.

12      Overt Act No. 15:   On March 4, 2024, via text message, using

13  coded language, defendant BILONOG provided an individual that he

14  believed was a DTO dispatcher (defendant GOYENECHE), but who, in

15  fact, was the CS, with the last four digits of a dollar bill serial

16  number for verification purposes.

17      Overt Act No. 16:   On March 4, 2024, via text message, using

18  coded language, defendant BILONOG asked an individual that he

19  believed was a DTO dispatcher (defendant GOYENECHE), but who, in

20  fact, was the CS, to provide the first four digits of a dollar bill

21  serial number for verification purposes, and the CS provided it to

22  him.

23      Overt Act No. 17:   On March 4, 2024, via text message, using

24  coded language, defendant BILONOG coordinated the cocaine delivery

25  time and location with an individual that he believed was a DTO

26  dispatcher (defendant GOYENECHE), but who, in fact, was the CS.

27

28

1    Overt Act No. 18:    On March 4, 2024, in Corona, California,
2  defendant GOYENECHE retrieved approximately 133 kilograms of cocaine
3  from defendant LOPEZ.

4    Overt Act No. 19:    On March 4, 2024, via Threema, using coded
5  language, defendant GOYENECHE informed defendant WEDDING that he had
6  retrieved 133 kilograms of cocaine from defendant LOPEZ, and
7  defendant WEDDING replied: "Good."

8    Overt Act No. 20:    On March 4, 2024, in San Bernardino,
9  California, defendant GOYENECHE met defendant BILONOG and delivered
10  approximately 293 kilograms of cocaine to him.

11    Overt Act No. 21:    On March 4, 2024, via Threema, defendant
12  GOYENECHE sent defendant WEDDING a photograph of the dollar bill
13  "token" that he had obtained from defendant BILONOG, and the
14  following text, which was translated from Spanish, to verify that he
15  had delivered the cocaine to the correct person: "Ready boss
16  delivered the order of 293."

17    Overt Act No. 22:    On March 4, 2024, via Threema, defendant
18  WEDDING forwarded the CS a screenshot of the verification message
19  that he had received from defendant GOYENECHE.

20  **MARCH 26, 2024: DEFENDANT GOYENECHE COLLECTS APPROXIMATELY 21**
21  **KILOGRAMS OF COCAINE FOR THE DTO**

22    Overt Act No. 23:    On March 26, 2024, in San Gabriel,
23  California, defendant GOYENECHE retrieved approximately 21 kilograms
24  of cocaine from defendant GARCIA.

25    Overt Act No. 24:    On March 26, 2024, via Threema, using coded
26  language, defendant GOYENECHE informed defendant WEDDING that he had
27  retrieved 21 kilograms of cocaine from defendant GARCIA.
28  //

**APRIL 9, 2024: THE DTO ATTEMPTS TO DELIVER APPROXIMATELY 375.1 KILOGRAMS OF COCAINE TO THE TP FOR EVENTUAL TRANSPORTATION TO CANADA**

Overt Act No. 25:    On April 3, 2024, via Threema, using coded language, defendant CLARK asked the CS what day the cocaine would be transported to Canada.

Overt Act No. 26:    On April 5, 2024, via Threema, using coded language, defendant WEDDING informed the CS that he had 300 kilograms of cocaine in Los Angeles that was ready to be delivered to a TP dispatcher the following day.

Overt Act No. 27:    On April 5, 2024, defendant CARDENAS swapped cars with defendant GOYENECHE and loaded defendant GOYENECHE's car with approximately 144 kilograms of cocaine that was being stored in a residence in Oak Hills, California, before returning the car to defendant GOYENECHE.

Overt Act No. 28:    On April 5, 2024, via Threema, using coded language, defendant GOYENECHE informed defendant WEDDING that he had retrieved 144 kilograms of cocaine from defendant CARDENAS, and defendant WEDDING replied: "Good."

Overt Act No. 29:    On April 5, 2024, in Perris, California, defendant GOYENECHE retrieved approximately 155 kilograms of cocaine from defendant GARCIA.

Overt Act No. 30:    On April 5, 2024, via Threema, using coded language, defendant GOYENECHE informed defendant WEDDING that he had retrieved 155 kilograms of cocaine from defendant GARCIA.

Overt Act No. 31:    On April 6, 2024, via Threema, using coded language, defendant WEDDING confirmed with the CS that he was prepared for a cocaine delivery later that evening.

1    <u>Overt Act No. 32:</u>    On April 7, 2024, via Threema, defendant

2    SINGH sent the CS a screenshot containing the telephone number of a

3    drug transporter (defendant VIRK) and a dollar bill serial number so

4    that the CS could pass the information to the person who would

5    deliver or coordinate the delivery of cocaine to the TP's dispatcher.

6    <u>Overt Act No. 33:</u>    On April 7, 2024, defendant IRIARTE called

7    an individual that he believed was a TP dispatcher (defendant VIRK),

8    but who, in fact, was the CS.

9    <u>Overt Act No. 34:</u>    On April 7, 2024, via text message, using

10    coded language, defendant IRIARTE informed an individual that he

11    believed was a TP dispatcher (defendant VIRK), but who, in fact, was

12    the CS, that he had cocaine to deliver.

13    <u>Overt Act No. 35:</u>    April 7, 2024, via text message, using coded

14    language, defendant IRIARTE asked an individual that he believed was

15    a TP dispatcher (defendant VIRK), but who, in fact, was the CS, to

16    provide the dollar bill serial number for verification purposes.

17    <u>Overt Act No. 36:</u>    On April 7, 2024, via text message, using

18    coded language, defendant IRIARTE asked an individual that he

19    believed was a TP dispatcher (defendant VIRK), but who, in fact, was

20    the CS, to confirm the cocaine delivery time and location.

21    <u>Overt Act No. 37:</u>    On April 7, 2024, via text message, using

22    coded language, defendant IRIARTE asked an individual that he

23    believed was a TP dispatcher (defendant VIRK), but who, in fact, was

24    the CS, to confirm what time s/he would be calling to coordinate the

25    cocaine delivery.

26    <u>Overt Act No. 38:</u>    On April 8, 2024, in a Threema group chat

27    with defendant SINGH and the CS, defendant RATTE, using coded

28    language, informed the CS that the person handling the cocaine

delivery would be in the greater Los Angeles area the following day for the cocaine delivery.

Overt Act No. 39:   On April 9, 2024, via Threema, using coded language, defendant WEDDING advised the CS to get the cocaine delivery "done."

Overt Act No. 40:   On April 9, 2024, via Threema, using coded language, defendant SINGH stated that he had spoken with defendant RATTE, and defendant RATTE had relayed that the TP dispatcher was prepared for a delivery on that date.

Overt Act No. 41:   On April 9, 2024, via Threema, using coded language, defendant SINGH stated that "Russian," meaning defendant IBRAGIMOV, would be the person handling the cocaine delivery.

Overt Act No. 42:   On April 9, 2024, via text message, using coded language, defendant VIRK began coordinating the cocaine delivery time and location with an individual that he believed was a DTO dispatcher (defendant IRIARTE), but who, in fact, was the CS.

Overt Act No. 43:   On April 9, 2024, via text message, using coded language, defendant VIRK referred the CS, who he believed was a DTO dispatcher (defendant IRIARTE), to another TP dispatcher (defendant IBRAGIMOV) and provided a new name, number, and dollar bill serial number for verification purposes, and the CS (acting as defendant VIRK) passed the new serial number to defendant IRIARTE.

Overt Act No. 44:   On April 9, 2024, via Threema, defendant WEDDING forwarded the CS a screenshot of the updated verification information, which included the new name, number, and dollar bill serial number that the CS (acting as defendant IRIARTE) had received from defendant VIRK.

Overt Act No. 45:    On April 9, 2024, via text message, using coded language, defendant IRIARTE asked an individual that he believed was a TP dispatcher (defendant IBRAGIMOV), but who in fact, was the CS, to confirm the cocaine delivery location.

Overt Act No. 46:    On April 9, 2024, via text message, using coded language, defendant IRIARTE told an individual that he believed was a TP dispatcher (defendant IBRAGIMOV), but who in fact, was the CS, that that the delivery would consist of 18 boxes containing 375 kilograms of cocaine.

Overt Act No. 47:    On April 9, 2024, via text message, using coded language, defendant IBRAGIMOV asked an individual that he believed was a DTO dispatcher (defendant IRIARTE), but who, in fact, was the CS, to provide the last four digits of the dollar bill serial number for verification purposes.

Overt Act No. 48:    On April 9, 2024, via text message, using coded language, defendant IBRAGIMOV coordinated the cocaine delivery time and location with an individual that he believed was a DTO dispatcher (defendant IRIARTE), but who, in fact, was the CS.

Overt Act No. 49:    On April 9, 2024, via text message, using coded language, defendant IRIARTE informed an individual that he believed was a TP dispatcher (defendant IBRAGIMOV), but who, in fact, was the CS, that he had arrived at the cocaine delivery meeting location in Riverside, California.

Overt Act No. 50:    On April 9, 2024, via Threema, using coded language, defendant WEDDING informed the CS that the DTO dispatcher (defendant IRIARTE) was at the agreed-upon delivery location in Riverside, California.

1    <u>Overt Act No. 51:</u>    On April 9, 2024, in Riverside, California,

2    defendant IRIARTE met defendant IBRAGIMOV and began transferring

3    boxes filled with approximately 375.1 kilograms of cocaine from his

4    car to IBRAGIMOV's, at which time law enforcement detained them and

5    seized the cocaine.

6    <u>Overt Act No. 52:</u>    On April 9, 2024, defendants IRIARTE and

7    IBRAGIMOV possessed with intent to distribute approximately 375.1

8    kilograms of a mixture and substance containing a detectable amount

9    of cocaine.

10    <u>Overt Act No. 53:</u>    On April 10, 2024, via Threema, using coded

11    language, defendant WEDDING confirmed with the CS that there were 375

12    kilograms of cocaine in the shipment that law enforcement seized on

13    April 9, 2024.

14    <u>Overt Act No. 54:</u>    On April 10, 2024, via Threema, using coded

15    language, defendant WEDDING requested that the CS provide him with

16    the name of the TP dispatcher (defendant IBRAGIMOV).

17    <u>Overt Act No. 55:</u>    On April 10, 2024, via Threema, using coded

18    language, defendant WEDDING advised the CS to tell the TP dispatcher

19    (defendant IBRAGIMOV) to leave the United States.

20    <u>Overt Act No. 56:</u>    On April 14, 2024, via Threema, defendant

21    CLARK sent the CS the name of the DTO dispatcher (defendant IRIARTE)

22    who was detained by law enforcement on April 9, 2024.

23    <u>Overt Act No. 57:</u>    On April 15, 2024, via Threema, defendant

24    CLARK sent the CS a felony release and agreement to appear form, a

25    prisoner receipt, and a receipt for property all relating to

26    defendant IRIARTE's arrest and detention on April 9, 2024.

27    //

28    //

**APRIL 9, 2024: DEFENDANT GOYENECHE POSSESSES APPROXIMATELY 414.8**

**KILOGRAMS OF COCAINE FOR THE PURPOSE OF DISTRIBUTING IT**

Overt Act No. 58:    On April 9, 2024, defendant GOYENECHE possessed with intent to distribute approximately 16.04 kilograms of a mixture and substance containing a detectable amount of cocaine at a residence in San Gabriel, California.

Overt Act No. 59:    On April 9, 2024, defendant GOYENECHE possessed with intent to distribute approximately 398.76 kilograms of a mixture and substance containing a detectable amount of cocaine in a car in San Gabriel, California.

**APRIL 9, 2024: DEFENDANT CARDENAS POSSESSES APPROXIMATELY 148.9**

**KILOGRAMS OF COCAINE**

Overt Act No. 60:    On April 9, 2024, defendant CARDENAS possessed approximately 148.9 kilograms of a mixture and substance containing a detectable amount of cocaine at a residence in Oak Hills, California.

All of the cocaine seized by law enforcement on April 9, 2024, is depicted below:



//

//

//

**MAY 3, 2024: THE DTO ATTEMPTS TO DELIVER APPROXIMATELY 347 KILOGRAMGS OF COCAINE TO THE TP FOR EVENTUAL TRANSPORTATION TO CANADA**

Overt Act No. 61:    On April 18, 2024, via Threema, using coded language and the CS as an intermediary, defendants WEDDING and SINGH agreed to continue working together to transport cocaine from the Central District of California to Canada.

Overt Act No. 62:    On April 28, 2024, defendants VIRK and ROWAL entered the United States from Canada in a long-haul semi-truck.

Overt Act No. 63:    On May 2, 2024, defendant SINGH, via Threema, using coded language, informed the CS that this time, defendant SINGH would arrange for the DTO dispatcher to meet the TP semi-truck driver directly to place the cocaine on the truck.

Overt Act No. 64:    On May 2, 2024, defendant SINGH sent the CS the telephone number of a TP drug transporter and a dollar bill serial number so that the CS could pass the information to the person who would deliver or coordinate the delivery of cocaine to the TP's semi-truck drivers (defendants VIRK and ROWAL).

Overt Act No. 65:    On May 3, 2024, defendants VIRK and ROWAL parked a semi-truck at a rest stop in Ontario, California, in anticipation of the cocaine delivery from the DTO.

Overt Act No. 66:    On May 3, 2024, via text message, using coded language, defendant JIMENEZ informed an individual that he believed was a TP semi-truck driver, but who, in fact, was the CS, that he was in Los Angeles.

Overt Act No. 67:    On May 3, 2024, via text message, using coded language, defendant JIMENEZ asked an individual that he believed was a TP semi-truck driver, but who, in fact, was the CS, where s/he was.

16

1       Overt Act No. 68:    On May 3, 2024, via text message, using

2  coded language, defendant JIMENEZ told an individual that he believed

3  was a TP semi-truck driver, but who, in fact, was the CS, that the

4  delivery would consist of 102 kilograms of cocaine.

5       Overt Act No. 69:    On May 3, 2024, via text message, using

6  coded language, a TP semi-truck driver provided an individual that he

7  believed was a DTO dispatcher (defendant JIMENEZ), but who, in fact,

8  was the CS, with an address in Perris, California for purposes of the

9  cocaine delivery.

10       Overt Act No. 70:    On May 3, 2024, via text message, using

11  coded language, defendant JIMENEZ informed an individual that he

12  believed was a TP semi-truck driver, but who, in fact, was the CS,

13  that he would arrive at the Perris, California cocaine delivery

14  location between 6:30 p.m. and 7:00 p.m.

15       Overt Act No. 71:    On May 3, 2024, via Threema, using coded

16  language, defendant WEDDING informed the CS that there would be two

17  "drops," meaning there would be two individuals delivering drugs for

18  the TP to transport.

19       Overt Act No. 72:    On May 3, 2024, via Threema, using coded

20  language, defendant WEDDING asked the CS to obtain a second dollar

21  bill serial number from the TP for verification purposes.

22       Overt Act No. 73:    On May 3, 2024, via Threema, using coded

23  language, defendant WEDDING informed the CS that one DTO dispatcher

24  had 245 kilograms of cocaine while the other had 102 kilograms of

25  cocaine.

26       Overt Act No. 74:    On May 3, 2024, via Threema, defendant SINGH

27  sent the CS a second dollar bill serial number so that the CS could

28  pass the information to the person who would deliver or coordinate

the delivery of cocaine to the TP's semi-truck drivers (defendants VIRK and ROWAL).

Overt Act No. 75:    On May 3, 2024, via Threema, using coded language, defendant SINGH informed the CS that the cocaine would not fit in the TP's semi-truck.

Overt Act No. 76:    On May 3, 2024, via Threema, using coded language and the CS as an intermediary, defendant WEDDING proposed a reduced price of $150,000 CAN to the TP for the cocaine shipment.

Overt Act No. 77:    On May 3, 2024, via Threema, using coded language and the CS as an intermediary, defendant WEDDING cancelled the cocaine shipment with the TP because defendant SINGH refused to accept a reduced price.

**AUGUST 1, 2024: DEFENDANT JIMENEZ POSSESSES APPROXIMATELY 201 KILOGRAMS OF COCAINE**

Overt Act No. 78:    On August 1, 2024, defendant JIMENEZ possessed approximately 201 kilograms of a mixture and substance containing a detectable amount of cocaine in a car parked outside of a residence in Moreno Valley, California.

COUNT TWO

[21 U.S.C. § 846]

[DEFENDANTS WEDDING, CLARK, AND BONILLA]

A.    OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing until on or about June 25, 2024, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, in Miami-Dade County, in the Southern District of Florida, in the countries of Mexico, Colombia, and Canada, and elsewhere, defendants RYAN JAMES WEDDING, also known as ("aka") "James Conrad King," aka "Jesse King," aka "~R137," aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka "El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka "Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," ANDREW CLARK, aka "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," and NAHIM JORGE BONILLA, aka "Nahhim," aka "The One," aka "$," aka "4SSP8KTR," and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally distribute and possess with intent to distribute the following controlled substances:

1.    At least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II); and

1    2.    At least 500 grams of a mixture and substance containing a

2  detectable amount of methamphetamine, a Schedule II controlled

3  substance, in violation of Title 21, United States Code, Sections

4  841(a)(1), (b)(1)(A)(viii).

5  B.    MANNER AND MEANS OF THE CONSPIRACY

6    The objects of the conspiracy were to be accomplished, in

7  substance, as follows:

8    1.    Through an intermediary, defendants WEDDING and CLARK would

9  provide defendant BONILLA with approximately 12 kilograms of cocaine

10  for the purpose of distributing it.

11    2.    Defendant BONILLA would pay for 7 kilograms of cocaine upon

12  delivery.

13    3.    Defendants WEDDING and CLARK would front defendant BONILLA

14  an additional 5 kilograms of cocaine.

15    4.    Defendant BONILLA would distribute and attempt to

16  distribute the cocaine.

17    5.    Defendants WEDDING and CLARK would threaten to kill

18  defendant BONILLA's mother if he did not either pay his outstanding

19  debt for the 5 kilograms of cocaine or return the cocaine.

20    6.    Defendant BONILLA would tender payment to defendants

21  WEDDING and CLARK via a tether cryptocurrency payment service for 2

22  kilograms of cocaine.

23    7.    Defendant BONILLA would send a driver to Laval, Québec,

24  Canada to tender approximately 20 kilograms of methamphetamine as

25  payment for the 3 remaining kilograms of cocaine.

26  C.    OVERT ACTS

27    On or about the following dates, in furtherance of the

28  conspiracy and to accomplish its objects, defendants WEDDING, CLARK,

and BONILLA, and others known and unknown to the Grand Jury,
committed various overt acts in Los Angeles, Riverside, and San
Bernardino Counties, within the Central District of California, in
the countries of Mexico, Colombia, and Canada, and elsewhere,
including, but not limited to, the following:

Overt Act No. 1:   On an unknown date, defendants WEDDING and
CLARK, and others known and unknown to the Grand Jury, provided
defendant BONILLA with approximately 12 kilograms of cocaine.

Overt Act No. 2:   On an unknown date, defendant BONILLA paid
defendants WEDDING and CLARK for 7 kilograms of cocaine.

Overt Act No. 3:   On an unknown date, defendant BONILLA
distributed and attempted to distribute the 12 kilograms of cocaine.

Overt Act No. 4:   On June 14, 2024, via Threema, using coded
language, defendant WEDDING told defendant BONILLA that he would kill
his mother.

Overt Act No. 5:   On June 14, 2024, via Threema, using coded
language, defendant BONILLA told a person who he believed was a
member of a drug trafficking organization run by defendants WEDDING
and CLARK (the "DTO") but who, in fact, was a confidential source
working with law enforcement (the "CS"), that through an
intermediary, defendant WEDDING had sold him 7 kilograms of cocaine
and given him an additional 5 kilograms.

Overt Act No. 6:   On June 14, 2024, via Threema, using coded
language, defendant BONILLA told the CS that defendant WEDDING was
threatening his mother because he owed money for 5 kilograms of
cocaine.

1      Overt Act No. 7:    On June 14, 2024, via Threema, using coded
2  language, defendant WEDDING told the CS that defendant BONILLA had
3  until June 17, 2024, to pay him for the 5 kilograms of cocaine.

4      Overt Act No. 8:    On June 17, 2024, via Threema, using coded
5  language, defendant CLARK directed the CS to have someone in
6  Montreal, Canada pick up 3 of the 5 kilograms of cocaine that
7  defendant BONILLA had been ordered to return.

8      Overt Act No. 9:    On June 17, 2024, via Threema, defendant
9  CLARK sent the CS the Threema ID for the person who would oversee the
10  cocaine return in Montreal, Canada.

11      Overt Act No. 10:    On June 18, 2024, via Threema, defendant
12  CLARK started a group chat titled "money from nahim" with himself, a
13  co-conspirator ("CC-1"), and the CS, for the purpose of discussing
14  defendant BONILLA's repayment for 2 of the 5 kilograms of cocaine.

15      Overt Act No. 11:    On June 18, 2024, in the Threema group chat
16  with CC-1 and the CS, defendant CLARK advised CC-1, using coded
17  language, to send a tether wallet so that defendant BONILLA could
18  repay him and defendant WEDDING for 2 kilograms of cocaine.

19      Overt Act No. 12:    On June 18, 2024, in the Threema group chat
20  with defendant CLARK and the CS, CC-1 sent a QR code for a tether
21  wallet for the CS to pass on to defendant BONILLA.

22      Overt Act No. 13:    On June 18, 2024, via Threema, defendant
23  BONILLA sent the CS a screenshot showing that he had paid 17,300 USDT
24  into the tether wallet account that CC-1 had sent the QR code for.

25      Overt Act No. 14:    On June 19, 2024, via Threema, using coded
26  language, defendant CLARK asked the CS what the status was regarding
27  defendant BONILLA's repayment for the remaining 3 kilograms of
28  cocaine.

1    <u>Overt Act No. 15:</u>    On June 19, 2024, via Threema, using coded
2    language, defendant CLARK asked the CS to send him a photograph of
3    the 20 kilograms of methamphetamine that defendant BONILLA was going
4    to send to Montreal, Canada as payment.

5    <u>Overt Act No. 16:</u>    On June 19, 2024, defendant BONILLA created
6    a group chat on Threema titled "20 wins mtl," which included
7    defendant CLARK, a second co-conspirator who was working for the DTO
8    ("CC-2"), and a third co-conspirator who was defendant BONILLA's drug
9    transporter ("CC-3"), and the CS, for the purpose of discussing a 20-
10   kilogram delivery of methamphetamine in Montreal, Canada.

11   <u>Overt Act No. 17:</u>    On June 20, 2024, in the Threema group chat
12   with defendant BONILLA, CC-2, CC-3, and the CS, defendant CLARK asked
13   in Spanish if everyone was ready.

14   <u>Overt Act No. 18:</u>    On June 20, 2024, in the Threema group chat
15   with defendant CLARK, CC-2, CC-3, and the CS, defendant BONILLA asked
16   in English if everyone was ready.

17   <u>Overt Act No. 19:</u>    On June 20, 2024, in the Threema group chat
18   with defendant CLARK, defendant BONILLA, CC-3, and the CS, CC-2 sent
19   a photograph of a 10-dollar Canadian bill as a verification "token"
20   so that CC-3 would know that s/he was meeting with the correct
21   person.

22   <u>Overt Act No. 20:</u>    On June 20, 2024, in the Threema group chat
23   with defendant CLARK, defendant BONILLA, CC-2, and the CS, CC-3 sent
24   a photograph of a 10-dollar Canadian bill "token" to confirm that
25   s/he had dropped the 20 kilograms of methamphetamine with the correct
26   person in Laval, Canada.

27   <u>Overt Act No. 21:</u>    On June 20, 2024, via Threema, defendant
28   BONILLA sent the CS a photograph of methamphetamine to demonstrate

the quality of methamphetamine that he had delivered to defendants WEDDING and CLARK.

Overt Act No. 22:    On June 25, 2024, via Threema, using coded language, defendant WEDDING told the CS that defendant BONILLA paid him in full for the 5 kilograms of cocaine.

COUNT THREE

[21 U.S.C. § 963]

[DEFENDANTS WEDDING, CLARK, RATTE, SINGH, BILONOG, GOYENECHE, IBRAGIMOV, CARDENAS, IRIARTE, LOPEZ, GARCIA, JIMENEZ, VIRK, and ROWAL]

A.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than in or around January 2024, and continuing until on or about May 3, 2024, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, in the countries of Mexico, Colombia, and Canada, and elsewhere, defendants RYAN JAMES WEDDING, also known as ("aka") "James Conrad King," aka "Jesse King," aka "~R137," aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka "El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka "Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," ANDREW CLARK, aka "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," HARDEEP RATTE, aka "~PP," aka "~diamond," aka "~GEARZ," aka "Uncle," aka "Tio," aka "9HW2UZZK," aka "ZER4X4H7," aka "BZUH5P4M," GURPREET SINGH, aka "~FARMER," aka "~Poppey 1," aka "Popey," aka "Z7S6CMNZ," aka "KU7TPJKB," aka "KDXJBUUT," GENNADII BILONOG, aka "John," aka "Jhon," CARLOS ALBERTO PEÑA GOYENECHE, aka "W7ZZTY4Y," RAKHIM IBRAGIMOV, aka "George," aka "Russian," JOEL SOSA CARDENAS, ANDRES FELIPE PUCCETTI IRIARTE, aka "Lala kid," ANTHONY MENDOZA LOPEZ, ANSELMO ACUNA GARCIA, aka "El Perro," aka "The Dog," JUAN MANUEL

25

1    QUIROZ JIMENEZ, IQBAL SINGH VIRK, aka "Mark," aka "Bill," and RANJIT

2    SINGH ROWAL, and others known and unknown to the Grand Jury,

3    conspired with each other to knowingly and intentionally export from

4    the United States at least five kilograms of a mixture and substance

5    containing a detectable amount of cocaine, a Schedule II narcotic

6    drug controlled substance, in violation of Title 21, United States

7    Code, Sections 953(a), 960(a)(1),(b)(1)(B)(ii).

8    B.    MANNER AND MEANS OF THE CONSPIRACY

9         The object of the conspiracy was to be accomplished, in

10   substance, through the means set forth in Section B, Paragraphs 1

11   through 10, of Count One of the First Superseding Indictment, which

12   are re-alleged and incorporated here.

13   C.    OVERT ACTS

14        On or about the following dates, in furtherance of the

15   conspiracy and to accomplish its object, defendants WEDDING, CLARK,

16   RATTE, SINGH, BILONOG, GOYENECHE, IBRAGIMOV, CARDENAS, IRIARTE,

17   LOPEZ, GARCIA, JIMENEZ, VIRK, and ROWAL, and others known and unknown

18   to the Grand Jury, committed various overt acts in Los Angeles,

19   Riverside, and San Bernardino Counties, within the Central District

20   of California, in the countries of Mexico, Colombia, and Canada, and

21   elsewhere, including, but not limited to, Overt Acts 1-22, 25-57, and

22   61-77 as set forth in Count One of this First Superseding Indictment,

23   which are re-alleged and incorporated here.

COUNT FOUR

[21 U.S.C. §§ 848(a), (b)]

[DEFENDANT WEDDING]

Beginning on an unknown date, but not later than in or around 2011, and continuing to on or about August 1, 2024, in Riverside, San Bernardino, and Los Angeles Counties, within the Central District of California, and in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant RYAN JAMES WEDDING, also known as ("aka") "James Conrad King," aka "Jesse King," aka "~R137," aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka "El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka "Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," engaged in a continuing criminal enterprise in that defendant WEDDING knowingly and intentionally violated Title 21, United States Code, Sections 841, 846, 848, 953, 960, and 963, by committing violations, including, but not limited to, the felony violations alleged in Counts One through Three, Seven through Nine, and Eleven of this First Superseding Indictment, which Counts are re-alleged and incorporated herein by reference as if fully set forth in this Count, all of which violations were part of a continuing series of felony violations of subchapters I and II of Title 21 of the United States Code, undertaken by defendant WEDDING in concert with at least five other persons with respect to whom defendant WEDDING occupied a position of organizer, supervisor, and manager, and from which continuing series of violations defendant WEDDING obtained substantial income and resources.

Furthermore, defendant WEDDING was a principal administrator, organizer, and leader of the criminal enterprise, which involved the

27

possession with intent to distribute and exportation of at least 150 kilograms of cocaine, a Schedule II narcotic controlled substance.

COUNT FIVE

[21 U.S.C. §§ 848(a), (b)]

[DEFENDANT CLARK]

Beginning on an unknown date, but not later than in or around 2021, and continuing to on or about August 1, 2024, in Riverside, San Bernardino, and Los Angeles Counties, within the Central District of California, and in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant ANDREW CLARK, aka "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," aka "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," engaged in a continuing criminal enterprise in that defendant CLARK knowingly and intentionally violated Title 21, United States Code, Sections 841, 846, 848, 953, 960, and 963, by committing violations, including, but not limited to, the felony violations alleged in Counts One through Three, and Seven through Eleven of this First Superseding Indictment, which Counts are re-alleged and incorporated herein by reference as if fully set forth in this Count, all of which violations were part of a continuing series of felony violations of subchapters I and II of Title 21 of the United States Code, undertaken by defendant CLARK in concert with at least five other persons with respect to whom defendant CLARK occupied a position of organizer, supervisor, and manager, and from which continuing series of violations defendant CLARK obtained substantial income and resources.

Furthermore, defendant CLARK was a principal administrator, organizer, and leader of the criminal enterprise, which involved the

possession with intent to distribute and exportation of at least 150
kilograms of cocaine, a Schedule II narcotic controlled substance.

COUNT SIX

[21 U.S.C. §§ 848(a), (b)]

[DEFENDANT RATTE]

Beginning on an unknown date, but not later than in or around January 2024, and continuing to on or about May 3, 2024, in Riverside, San Bernardino, and Los Angeles Counties, within the Central District of California, and in the countries of Mexico, Colombia, and Canada, and elsewhere, defendant HARDEEP RATTE, aka "~PP," aka "~diamond," aka "~GEARZ," aka "Uncle," aka "Tio," aka "9HW2UZZK," aka "ZER4X4H7," aka "BZUH5P4M," engaged in a continuing criminal enterprise in that defendant RATTE knowingly and intentionally violated Title 21, United States Code, Sections 841, 846, 848, 953, 960, and 963, by committing violations, including, but not limited to, the felony violations alleged in Counts One and Three of this First Superseding Indictment, which Counts are re-alleged and incorporated herein by reference as if fully set forth in this Count, all of which violations were part of a continuing series of felony violations of subchapters I and II of Title 21 of the United States Code, undertaken by defendant RATTE in concert with at least five other persons with respect to whom defendant RATTE occupied a position of organizer, supervisor, and manager, and from which continuing series of violations defendant RATTE obtained substantial income and resources.

Furthermore, defendant RATTE was a principal administrator, organizer, and leader of the criminal enterprise, which involved the possession with intent to distribute and exportation of at least 150 kilograms of cocaine, a Schedule II narcotic controlled substance.

COUNT SEVEN

[21 U.S.C. § 848(e)(1)(A)]

[DEFENDANTS WEDDING AND CLARK]

On or about November 20, 2023, in Los Angeles County, within the Central District of California, and in the countries of Mexico, Colombia, and Canada, and elsewhere, defendants RYAN JAMES WEDDING, also known as ("aka") "James Conrad King," aka "Jesse King," aka "~R137," aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka "El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka "Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," and ANDREW CLARK, aka "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," aka "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," and others known and unknown to the Grand Jury, while engaging in and working in furtherance of a continuing criminal enterprise, as charged in Counts Four and Five of the First Superseding Indictment, and while engaged in an offense punishable under Title 21, United States Code, Section 841(b)(1)(A) or 960(b)(1), namely:

(1)  conspiracy to possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II); and

(2)  conspiracy to export from the United States at least five kilograms of a mixture and substance containing a detectable amount

1  of cocaine, a Schedule II narcotic drug controlled substance, in
2  violation of Title 21, United States Code, Sections 953(a),
3  960(a)(1), (b)(1)(B)(ii);
4  intentionally killed and counseled, commanded, induced, procured, and
5  caused the intentional killing of another person, namely, Victim A,
6  and such killing did result.

COUNT EIGHT

[21 U.S.C. § 848(e)(1)(A)]

[DEFENDANTS WEDDING AND CLARK]

On or about November 20, 2023, in Los Angeles County, within the Central District of California, and in the countries of Mexico, Colombia, and Canada, and elsewhere, defendants RYAN JAMES WEDDING, also known as ("aka") "James Conrad King," aka "Jesse King," aka "~R137," aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka "El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka "Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," and ANDREW CLARK, aka "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," aka "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," and others known and unknown to the Grand Jury, while engaging in and working in furtherance of a continuing criminal enterprise, as charged in Counts Four and Five of the First Superseding Indictment, and while engaged in an offense punishable under Title 21, United States Code, Section 841(b)(1)(A) or 960(b)(1), namely:

(1)  conspiracy to possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II); and

(2)  conspiracy to export from the United States at least five kilograms of a mixture and substance containing a detectable amount

of cocaine, a Schedule II narcotic drug controlled substance, in

violation of Title 21, United States Code, Sections 953(a),

960(a)(1), (b)(1)(B)(ii);

intentionally killed and counseled, commanded, induced, procured, and

caused the intentional killing of another person, namely, Victim B,

and such killing did result.

COUNT NINE

[21 U.S.C. §§ 846, 848(e)(1)(A)]

[DEFENDANTS WEDDING AND CLARK]

On or about November 20, 2023, in Los Angeles County, within the Central District of California, and in the countries of Mexico, Colombia, and Canada, and elsewhere, defendants RYAN JAMES WEDDING, also known as ("aka") "James Conrad King," aka "Jesse King," aka "~R137," aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka "El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka "Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," and ANDREW CLARK, aka "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," aka "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," and others known and unknown to the Grand Jury, while engaging in and working in furtherance of a continuing criminal enterprise, as charged in Counts Four and Five of the First Superseding Indictment, and while engaged in an offense punishable under Title 21, United States Code, Section 841(b)(1)(A) or 960(b)(1), namely:

(1)  conspiracy to possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II); and

(2)  conspiracy to export from the United States at least five kilograms of a mixture and substance containing a detectable amount

of cocaine, a Schedule II narcotic drug controlled substance, in

violation of Title 21, United States Code, Sections 953(a),

960(a)(1), (b)(1)(B)(ii);

intentionally attempted to kill and counsel, command, induce,

procure, and cause the intentional killing of another person, namely,

Victim C.

COUNT TEN

[21 U.S.C. § 848(e)(1)(A)]

[DEFENDANTS CLARK and CUNNINGHAM]

On or about April 1, 2024, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and in the countries of Mexico, Colombia, and Canada, and elsewhere, defendants ANDREW CLARK, also known as ("aka") "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," aka "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," and MALIK DAMION CUNNINGHAM, aka "Jamal Abukar," aka "~MrPerfect," aka "YBWZYA9W," and others known and unknown to the Grand Jury, while engaging in and working in furtherance of a continuing criminal enterprise, as charged in Count Five of the First Superseding Indictment, and while engaged in an offense punishable under Title 21, United States Code, Section 841(b)(1)(A) or 960(b)(1), namely:

(1)   conspiracy to possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II); and

(2)   conspiracy to export from the United States at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 953(a), 960(a)(1), (b)(1)(B)(ii);

intentionally killed and counseled, commanded, induced, procured, and
caused the intentional killing of another person, namely, Victim D,
and such killing did result.

COUNT ELEVEN

[21 U.S.C. § 848(e)(1)(A)]

[DEFENDANTS WEDDING AND CLARK]

On or about May 18, 2024, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and in the countries of Mexico, Colombia, and Canada, and elsewhere, defendants RYAN JAMES WEDDING, also known as ("aka") "James Conrad King," aka "Jesse King," aka "~R137," aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka "El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka "Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," and ANDREW CLARK, aka "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," aka "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF," and others known and unknown to the Grand Jury, while engaging in and working in furtherance of a continuing criminal enterprise, as charged in Counts Four and Five of the First Superseding Indictment, and while engaged in an offense punishable under Title 21, United States Code, Section 841(b)(1)(A) or 960(b)(1), namely:

(1)  conspiracy to possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II); and

(2)  conspiracy to export from the United States at least five kilograms of a mixture and substance containing a detectable amount

40

1  of cocaine, a Schedule II narcotic drug controlled substance, in

2  violation of Title 21, United States Code, Sections 953(a),

3  960(a)(1), (b)(1)(B)(ii);

4  intentionally killed and counseled, commanded, induced, procured, and

5  caused the intentional killing of another person, namely, Victim E,

6  and such killing did result.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. §§ 2(a), 2(b)]

[DEFENDANTS IBRAGIMOV and IRIARTE]

On or about April 9, 2024, in Riverside County, within the Central District of California, defendants RAKHIM IBRAGIMOV, aka "George," aka "Russian," ANDRES FELIPE PUCCETTI IRIARTE, aka "Lala kid," and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute, and willfully caused to be possessed with intent to distribute, at least five kilograms, that is, approximately 375.1 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. §§ 2(a), 2(b)]

[DEFENDANT GOYENECHE]

On or about April 9, 2024, in Los Angeles County, within the Central District of California, defendant CARLOS ALBERTO PEÑA GOYENECHE, aka "W7ZZTY4Y," and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute, and willfully caused to be possessed with intent to distribute, at least five kilograms, that is, approximately 414.4 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. §§ 2(a), 2(b)]

[DEFENDANT CARDENAS]

On or about April 9, 2024, in San Bernardino County, within the Central District of California, defendant JOEL SOSA CARDENAS, and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute, and willfully caused to be possessed with intent to distribute, at least five kilograms, that is, approximately 148.9 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. §§ 2(a), 2(b)]

[DEFENDANT JIMENEZ]

On or about August 1, 2024, in Riverside County, within the Central District of California, defendant JUAN MANUEL QUIROZ JIMENEZ and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute, and willfully caused to be possessed with intent to distribute, at least five kilograms, that is, approximately 201 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, as depicted below:





COUNT SIXTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT CARDENAS]

On or about April 9, 2022, in San Bernardino County, within the Central District of California, defendant JOEL SOSA CARDENAS knowingly possessed a firearm, namely, a 9mm, M9A1 semi-automatic Beretta pistol, bearing serial number BER768500, in furtherance of drug trafficking crimes, namely, Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of Title 21, United States Code 846, as charged in Count One of this First Superseding Indictment, Conspiracy to Export Cocaine, in violation of Title 21, United States Code 963, as charged in Count Three of this First Superseding Indictment, and Possession with Intent to Distribute Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II), as charged in Count Fourteen of this First Superseding Indictment.

SENTENCING ALLEGATION

[DEFENDANT WEDDING]

Defendant RYAN JAMES WEDDING, also known as ("aka") "James Conrad King," aka "Jesse King," aka "~R137," aka "~PE," "~3.14," aka "R," aka "RW," aka "Mexi," aka "El Jefe," aka "El Toro," aka "Boss," aka "Buddy," aka "Giant," aka "Grande," aka "Public," aka "Public Enemy," aka "NPKY8WY7," aka "FUJ93HXR," prior to committing the offenses alleged in Counts One through Three of the First Superseding Indictment, had been finally convicted of a serious drug felony as that term is defined and used in Title 21, United States Code, Sections 802(57), 841, and 960, namely, Conspiracy to Distribute Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, in the United States District Court for the Southern District of California, case number 3:08-cr-02386-JM-3, on or about November 30, 2009, for which defendant WEDDING served a term of imprisonment of more than 12 months.

Defendant WEDDING was released from a term of imprisonment for that offense within 15 years of the commencement of the offenses alleged in Counts One through Three of this First Superseding Indictment.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

[DEFENDANTS WEDDING, CLARK, RATTE, SINGH, BILONOG, GOYENECHE, IBRAGIMOV, CARDENAS, IRIARTE, LOPEZ, GARCIA, JIMENEZ, VIRK, and ROWAL]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of any defendant's conviction of the offenses set forth in any of Counts One, Two, and Four through Fifteen of this First Superseding Indictment.

2.   Any defendant so convicted, shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from such offense;

(b)  All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense;

(c)  All right, title, and interest in any firearm or ammunition involved in or used in such offense; and

(d)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.   Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted, shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located

upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. §§ 853 and 970]

[DEFENDANTS WEDDING, CLARK, RATTE, SINGH, BILONOG, GOYENECHE, IBRAGIMOV, CARDENAS, IRIARTE, LOPEZ, GARCIA, JIMENEZ, VIRK, and ROWAL]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Sections 853 and 970, in the event of any defendant's conviction of the offense set forth in Count Three of this First Superseding Indictment.

2.    Any defendant so convicted, shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from such offense;

(b)  All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense;

(c)  All right, title, and interest in any firearm or ammunition involved in or used in such offense; and

(d)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted, shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located

upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 924(d)(1)]

[DEFENDANT CARDENAS]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), in the event of defendant CARDENAS's conviction of the offense set forth in Count Sixteen of this First Superseding Indictment.

2.    Defendant CARDENAS, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any firearm or ammunition involved in or used in such offense;

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), defendant CARDENAS, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant CARDENAS, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the

//

//

//

court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.


                                        A TRUE BILL


                                        /S/
                                        _____
                                        Foreperson


E. MARTIN ESTRADA
United States Attorney


MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

KEVIN J. BUTLER
Assistant United States Attorney
Acting Chief, Violent and
Organized Crime Section

LYNDSI ALLSOP
MARIA JHAI
Assistant United States Attorneys
Violent and Organized Crime
Section

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          PLAINTIFF,<br><br>                    v.<br><br>ANDREW CLARK,<br>      aka "~Mero güero,"<br>      aka "~The Dictator,"<br>      aka "~El manda mas,"<br>      aka "~el chiquito loco,"<br>      aka "~el niño problemático,"<br>      aka "~The Dick,"<br>      aka "El Guapo,"<br>      aka "Mero Wero,"<br>      aka "Dick,"<br>      aka "Dictator,"<br>      aka "New Dict,"<br>      aka "DCY87D3T,"<br>      aka "U9BM5XPD,"<br>      aka "6YFRTV3P,"<br>      aka "8ZEDZR2D,"<br>      aka "J57629UV,"<br>      aka "ZFJJX7EF,"<br><br>                          DEFENDANT. | CASE NUMBER:<br><br>**24-cr-369(A)-SPG - 2**<br><br><br><br><br><br><br>**WARRANT FOR ARREST** |

To:      UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest ANDREW CLARK, also known as ("aka") "~Mero güero," aka "~The Dictator," aka "~El manda mas," aka "~el chiquito loco," aka "~el niño problemático," aka "~The Dick," aka "El Guapo," aka "Mero Wero," aka "Dick," aka "Dictator," aka "New Dict," "DCY87D3T," aka "U9BM5XPD," aka "6YFRTV3P," aka "8ZEDZR2D," aka "J57629UV," aka "ZFJJX7EF,"  and bring him forthwith to the nearest Magistrate Judge to answer a First Superseding Indictment charging him with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846; Conspiracy to Export Cocaine, in violation of Title 21, United States Code, Section 963; Continuing Criminal Enterprise, in violation of Title 21 United States Code, Sections 848(a), (b); Murder in Connection with a Continuing Criminal Enterprise and Drug Crime, in violation of Title 21 United States Code, Sections 848(e)(1)(A); and Attempt to Commit Murder in Connection with a Continuing Criminal Enterprise and Drug Crime, in violation of Title 21 United States Code, Sections 848(e)(1)(A).

| | |
|---|---|
| Brian Karth<br>NAME OF ISSUING OFFICER<br><br>Clerk of Court<br>TITLE OF ISSUING OFFICER<br><br>*Yanira Yvonn Camille*<br>SIGNATURE OF DEPUTY CLERK | September 17, 2024    Los Angeles, CA<br><br><br>DATE AND LOCATION OF ISSUANCE<br><br>By:   Hon. Steve Kim<br>NAME OF JUDICIAL OFFICER |

### RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION)

| | |
|---|---|
| _____<br>DATE RECEIVED | _____<br>NAME OF ARRESTING OFFICER |
| _____<br>DATE OF ARREST | _____<br>TITLE |
| **DESCRIPTIVE INFORMATION FOR DEFENDANT<br>CONTAINED ON PAGE TWO** | _____<br>SIGNATURE OF ARRESTING OFFICER |